UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jason S. Dionne and Denise C. Dionne

   v.                                            Civil No. 15-cv-056-LM
                                                           Opinion No. 2015 DNH 125

Federal National Mortgage Association
and JPMorgan Chase Bank, N.A.

**O R D E R**

This mortgage foreclosure dispute was removed to this court from the Hillsborough County Superior Court by the defendants, Federal National Mortgage Association ("FNMA") and JPMorgan Chase Bank, N.A. (individually "Chase," and collectively with FNMA, the "Defendants"). Previously, the Defendants moved to dismiss the case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In an order dated April 23, 2015, this court denied the Defendants' motion to dismiss without prejudice, and granted plaintiffs Jason and Denise Dionne an opportunity to file an amended complaint. The Defendants subsequently filed a motion for reconsideration of the April 23 order, contending that the court had erred in granting the Dionnes leave to amend their complaint. The Defendants urge the court not to consider an amended complaint, and instead to rule on the motion to dismiss.

1

For reasons that will be explained below, the Defendants' motion for reconsideration is GRANTED. Although the Dionnes did file an amended complaint, the court will disregard the amended version, and will instead treat the initial complaint as the operative pleading for purposes of the motion to dismiss.

Unfortunately for the Defendants, today's victory will likely ring hollow. While they have prevailed on the court to reconsider its April 23 order and to rule on the motion to dismiss, for the reasons that follow, the court concludes that the Defendants' motion to dismiss should be DENIED.

## Background[1]

The Dionne family has lived at the subject property, located in Pelham, New Hampshire, since 1976. Verified Petition ¶ 12. Pursuant to a 2006 loan agreement, the Defendants held a mortgage on the property at the time that these events occurred.[2]

On August 12, 2014, Ms. Dionne received a letter from Chase indicating that a foreclosure sale of the property had been

---

[1] The facts are summarized from the Dionnes' Verified Petition for Ex-Parte Order Voiding Foreclosure Ab Initio or Alternatively to Enjoin Recordation of Foreclosure Deed and/or for Leave of Court to File Lis Pendens ("Verified Petition") (doc. no. 1-1), and the exhibits attached thereto. See Trans-Spec Truck Serv. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008).

[2] The mortgage was apparently held by several other lenders before it was assigned to FNMA.

"rescheduled" for October 1, 2014.[3]  Id. ¶ 15; see also Ex. 1 to Verified Petition.  Immediately thereafter, the Dionnes applied for a loan modification, and Chase acknowledged receipt of the application by letter dated August 27, 2014.  Id. ¶ 16; see also Ex. 2 to Verified Petition.  For reasons that are unclear, the October 1 foreclosure sale did not take place.  Id. ¶ 17.

In October and November of 2014, the Dionnes submitted all of the paperwork that Chase requested in connection with the loan modification, but were repeatedly told that Chase had not received certain materials.  Id. ¶¶ 18-21; see also Exs. 3, 4 to Verified Petition.  On November 18, 2014, before a decision was reached on the loan modification, the Dionnes received a letter indicating that the Defendants had authorized another foreclosure sale.  Id. ¶¶ 22-23; see also Ex. 5 to Verified Petition.  The Dionnes contacted Chase, and were assured that no sale would occur during the pendency of the application.  Id. ¶ 23.

Several weeks later, on December 11, 2014, the Dionnes received another letter indicating that a foreclosure sale had been scheduled for January 12, 2015.  Id. ¶ 24; see also Ex. 6 to Verified Petition.  The Dionnes contacted Chase on January

---

[3] The record suggests that the foreclosure sale was originally scheduled in 2012, but was cancelled when members of the Dionne family filed for bankruptcy.

3

10, 2015, and were again assured that the loan modification application was being considered and that a foreclosure sale would not occur until that process was complete. Id. ¶ 25. Nevertheless, the foreclosure sale took place as scheduled on January 12, and the property was apparently sold to a third party. Id. ¶ 26; see also Ex. 7 to Verified Petition.

The Dionnes filed the Verified Petition in the Hillsborough County Superior Court shortly after the foreclosure sale. The Dionnes allege that they had relied to their detriment on Chase's promises that the Defendants would not foreclose during the pendency of the loan modification application, and they allege that the Defendants violated federal consumer protection law by foreclosing on the property during that pendency period. After the Superior Court granted an ex parte preliminary injunction barring the recording of the foreclosure deed, the Defendants removed the proceedings to this court, and now move to dismiss the Verified Petition.

In their objection to the motion to dismiss, the Dionnes state:

> Defendants' argument for dismissal is premature inasmuch as no complaint is presently before the court. Plaintiffs' pleading in issue was filed in state court as an ex parte preliminary injunction seeking temporary relief pending [a] hearing on the merits of the ex parte hearing. Said pleading was not accompanied by a separate complaint at the time, but its filing was contingent on the outcome of the hearing on the merits of the ex parte hearing. . . .

4

> Plaintiffs hereby move that their ex parte motion be further allowed pending the filing of a complaint to preserve the status quo until the court issues a decision on the merits of the action.

See Pls.' Objection to Defs.' Mot. to Dismiss (doc. no. 6) ¶¶ 1-2.  Though it was not overtly phrased as such, the court construed this language as a request by the Dionnes for leave to amend the Verified Petition.  By order dated April 23, 2015, the court denied the Defendants' motion to dismiss without prejudice, and granted the Dionnes leave to amend the Verified Petition.  The Dionnes did so, but not before the Defendants filed a motion to reconsider the April 23 order.[4]

## Discussion

I.  Motion for Reconsideration

    A.  Legal Standard

"[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  U.S. v. Allen, 573 F.3d 42, 53 (1st Cir. 2009); see also LR 7.2(d) (motions for reconsideration must

---

[4] Very recently, the Defendants filed a motion to dismiss the amended complaint (doc. no. 15).

"demonstrate that the order was based on a manifest error of fact or law").

B.  Application

Upon further reflection, the court believes that it was an error of law to afford the Dionnes leave to amend the Verified Petition.  As an initial matter, the court's construction of the above-quoted language from the Dionnes' objection to the motion to dismiss as a request for leave to amend the Verified Petition was highly generous because the Dionnes did not clearly ask for such relief.  At best, the request for leave to amend was stated in imprecise and oblique terms.  Construing this language as a request for leave to amend was itself an error of law.  See Boone v. William W. Backus Hosp., 864 A.2d 1, 10 (Conn. 2005) ("The interpretation of pleadings is always a question of law for the court.") (citations omitted) (internal quotation marks omitted).

What is more, as the Defendants point out in their motion for reconsideration, this court's local rules unequivocally require that a motion to amend be set forth in a separate pleading, rather than bunched in with an objection to a pending motion.  Local Rule 7.1(a)(1) states as follows:

> All motions must contain the word "motion" in the title.  Filers shall not combine multiple motions seeking separate and distinct relief into a single filing.  Separate motions must be filed.  Objections

6

>    to pending motions and affirmative motions for relief
>    shall not be combined in one filing.

In objecting to the motion for reconsideration, on this issue, the Dionnes note only that the local rules permit the court to "excuse a failure to comply with any local rule whenever justice so requires." LR 1.3(b). The Dionnes, however, provide no explanation for their failure to file a separate motion to amend, if indeed that was their aim. This is not an instance where an unrepresented litigant understandably fails to comply with procedural minutiae. See, e.g., Erikson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (noting that certain pro se pleadings should be construed liberally). Rather, the Dionnes are represented by counsel and are expected to comply with the basic rules governing civil practice in this court. Consequently, they cannot meet the threshold required by Local Rule 1.3(b) to excuse their noncompliance. In sum, this court committed an error of law by disregarding the plain mandates of Local Rule 7.1(a)(1).

The court's error of law had serious implications for the Defendants. Perhaps because the request for leave was not clearly stated, or perhaps because the Dionnes did not request such relief in a separate motion to amend, the Defendants understandably did not object. As such, the court granted significant relief to the Dionnes without the Defendants'

7

opportunity to weigh in, effectively mooting a fully-briefed dispositive motion.

The court finds that its April 23 decision to grant the Dionnes leave to amend the Verified Petition was based on an error of law.[5]  Therefore, the Defendants' motion for reconsideration is GRANTED.  The court will disregard the amended Verified Petition and will assess the motion to dismiss on the basis of the original version.

II.  Motion to Dismiss

   A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citations omitted) (internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

---

[5] In addition to noting the Dionnes' failure to comply with Local Rule 7.1(a)(1), the motion for reconsideration identified several other grounds on which the court should reconsider its April 23 order.  Because the court finds the non-compliance with the local rules to be an adequate basis on which to grant the motion for reconsideration, the court need not assess these other issues.

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is a "context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679. In assessing a motion to dismiss under Rule 12(b)(6), the court considers the allegations in the complaint, as well as exhibits attached to, or referenced in, the complaint. Trans-Spec Truck Serv., 524 F.3d at 321.

B. Application

The Defendants seek dismissal on several grounds. First, they contend that this action is untimely because, under New Hampshire law, a challenge to the validity of a foreclosure is barred unless the action is commenced before the foreclosure sale takes place. Second, the Defendants contend that they are entitled to dismissal because, contrary to allegations in the Verified Petition, their actions did not violate federal consumer protection law.[6]

---

[6] The Defendants also seek to dismiss on grounds that the Dionnes may not rely on the covenant of good faith and fair dealing to force a lender to modify the terms of a loan. See, e.g., Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 130 (D.N.H. 2012). The court does not reach this issue because the Dionnes do not invoke the covenant of good faith and fair dealing.

### i. Timeliness of the Dionnes' Petition

Under New Hampshire law, a mortgagor who seeks to challenge the validity of a planned foreclosure sale must initiate legal proceedings <u>before</u> the foreclosure sale occurs. N.H. Rev. Stat. Ann. § 479:25(II); <u>see also</u> Nardone v. Deutsche Bank Nat'l Trust Co., No. 13-cv-390-SM, 2014 WL 1343280, at *4 (D.N.H. Apr. 4, 2014); Neenan v. CitiMortgage, Inc., No. 13-cv-435-JD, 2013 WL 6195579, at *2 (D.N.H. Nov. 26, 2013). Because the Dionnes did not file this suit until after the January 12, 2015 foreclosure sale had occurred, the Defendants argue that the case must be dismissed as untimely.

This argument is entirely unpersuasive. The Dionnes have alleged that, on two separate occasions, they were assured by Chase personnel that a foreclosure sale would not occur so long as their application for a loan modification remained pending. Indeed, the Verified Petition includes a specific allegation that the Dionnes "relied to their detriment [on] the statement by Chase that a foreclosure would not occur pending the review." Verified Petition ¶ 24. Construing these allegations in favor of the Dionnes, as the court must, Foley, 772 F.3d at 71, the Verified Petition plausibly suggests that the Dionnes opted not to take legal action because they reasonably relied on Chase's promises that the foreclosure sale would not go forward.

10

### ii.  Violation of Federal Consumer Protection Law

The Verified Petition alleges that the Defendants violated Regulation X of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. § 1024.41, by conducting the foreclosure sale prior to acting on the Dionnes' loan modification application.  In relevant part, RESPA provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall [e]valuate the borrower for all loss mitigation options available to the borrower; and [p]rovide the borrower with a notice in writing stating the servicer's determination . . . ."[7]  12 C.F.R. § 1024.41(c).  RESPA further provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any . . . foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not . . . conduct a foreclosure sale . . . ."  Id. at § 1024.41(g).

The Defendants advance two arguments suggesting that they are entitled to dismissal of the RESPA allegations.  First, the

---

[7] The Verified Petition refers to a "loan modification application," while RESPA refers to a "loss mitigation application."  This order uses the terms interchangeably.

11

Defendants contend that the Dionnes never submitted a complete loss mitigation application. This argument is unavailing.

RESPA provides that "[a] complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." Id. at § 1024.41(b)(1). The Verified Petition plainly alleges that the Dionnes provided all of the information that Chase requested, often providing documents multiple times as Chase could not locate items that had previously been submitted. Verified Petition ¶¶ 18-21. What is more, the Dionnes have alleged that they were assured on at least two occasions that their loan modification application was complete and under review. Id. ¶¶ 21, 25. These allegations are adequate to support a claim that the Dionnes submitted a complete loss mitigation application.

Second, the Defendants contend that the timing of events precludes relief under RESPA. RESPA restricts a lender's right to conduct a foreclosure sale where the borrower, after receiving a "first notice or filing required by applicable law for any . . . foreclosure process," submits a complete loss mitigation application at least 37 days before a foreclosure sale. 12 C.F.R. § 1024.41(g). To briefly summarize, Chase sent a letter dated August 12, 2014, indicating that a foreclosure

sale would occur on October 1, 2014.  The Dionnes allege that they submitted their complete loss mitigation application on August 27, 2014.  After the October 1 sale did not occur, the Dionnes received a second letter noticing a foreclosure sale.  This letter was dated December 11, 2014, and indicated that the sale would occur on January 12, 2015.  The Dionnes allege that they never received a response from Chase as to whether their loss mitigation application had been accepted or rejected, but that the foreclosure sale took place as scheduled on January 12, 2015.

    The Defendants contend that the notices of foreclosure that the Dionnes received in August and December of 2014 were not the "first" such notices, because a foreclosure process had apparently been commenced in 2012 before members of the Dionne family filed for bankruptcy.  Indeed, the August 2014 foreclosure notice indicated that a foreclosure sale had been "rescheduled" to occur on October 1, 2014.  See Ex. 1 to Verified Petition.

    At this early stage of the litigation, the record is far from complete.  Though the Defendants allude to the 2012 commencement of a foreclosure process, they have not included copies of any notices or other documents that would constitute "first" filings for purposes of RESPA.  What is more, the August 12, 2014 letter that Chase sent to the Dionnes indicated that

13

the foreclosure sale had been "rescheduled," but it was otherwise a standard form letter and provided no additional information.  In sum, absent evidence to the contrary, the Dionnes have pled facts reasonably suggesting that the August 12 letter constituted the "first" notice or filing.

Separately, the Defendants contend that the Dionnes' loss mitigation application was not submitted at least 37 days prior to the foreclosure sale, as RESPA requires.  See 12 C.F.R. § 1024.41(g).  To support this argument, the Defendants note that the August 12 letter noticed a foreclosure sale which was to occur on October 1, 2014.  Therefore, when the Dionnes submitted their application on August 27, 2014, they did so just 35 days before the date of the scheduled sale.

Section 1024.41(g) obliges the borrower to submit the loss mitigation application "more than 37 days before a foreclosure sale . . . ."  The Defendants would have the court identify October 1 as the date of the foreclosure sale for purposes of calculating the timeliness of the application, even though it is undisputed that the sale did not actually occur until January 12, 2015.  The Defendants do not cite authority supporting this contention, and it strikes the court as contrary to the plain wording of Section 1024.41(g).  The Dionnes have pled facts sufficient to suggest that their application was submitted on

August 27, 2014, which was far greater than 37 days prior to the actual foreclosure sale date of January 12, 2015.

In sum, the Verified Petition plausibly alleges that the Dionnes timely submitted a complete loss mitigation application, and that the Defendants subsequently violated RESPA by conducting a foreclosure sale prior to acting on the application.  Thus, the Defendants are not entitled to dismissal of the Dionnes' RESPA allegations.

## Conclusion

For the foregoing reasons, the clerk of the court is directed to do the following:

(1) GRANT the Defendants' motion for reconsideration (doc. no. 12).

(2) DENY the Defendants' motion to dismiss (doc. no. 5).

(3) STRIKE the Dionnes' amended complaint (doc. no. 14) from the record, or clearly note that the only operative pleading is the Verified Petition (doc. no. 1-1).

(4) TERMINATE AS MOOT the Defendants' motion to dismiss the amended complaint (doc. no. 15).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 16, 2015
cc:   David E. Buckley, Esq.
      Nathan Reed Fennessy, Esq.