**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Jason S. Dionne, et al.

    v.                                              Civil No. 15-cv-056-LM
                                                      Opinion No. 2016 DNH 155
Federal National Mortgage
Association and
JPMorgan Chase Bank, N.A.


**O R D E R**

Plaintiffs originally filed this mortgage foreclosure
dispute in New Hampshire Superior Court, Hillsborough County,
Southern District.  Defendants Federal National Mortgage
Association ("Fannie Mae") and JPMorgan Chase Bank, N.A.
("Chase") removed the lawsuit to this court.  Defendants move to
exclude the opinions and proposed testimony of plaintiffs'
proposed expert, Diane Cipollone.  Plaintiffs object.


**Background[1]**

Denise Dionne has lived at her home at 40 Tallant Road in
Pelham, New Hampshire (the "property") since 1977.  In 2005,
Denise added her son, Jason Dionne, to the property's deed.  In
2006, Denise, Jason, and Jason's wife, Kathy Dionne
(collectively, the "Dionnes"), took out a loan, which was

---

[1] The facts are summarized in detail in the court's order
granting in part and denying in part defendants' motion to
dismiss.  See doc. no. 37.  The court provides only a brief
summary of the facts here.

secured by a mortgage on the property.  The mortgage states that Mortgage Electronic Registration Systems, Inc. ("MERS") is the mortgagee as nominee for the lender, Domestic Bank.

MERS assigned the mortgage and note to Washington Mutual Bank ("Mutual Bank") in 2008.  Chase obtained the mortgage and note when it acquired Mutual Bank later in 2008.  In 2010, Chase assigned the mortgage to Fannie Mae.  Chase also acted as the loan servicer at all times relevant to this case.  The Dionnes allege that they were in default on their obligations under the note when Mutual Bank and Chase obtained the loan, and when Chase began servicing the loan.

In 2010, the Dionnes' loan was modified after they fell behind on their loan payments.  Sometime after the 2010 loan modification, the Dionnes again fell behind on their modified loan payment obligations.

In August 2014, Chase sent the Dionnes[2] a letter informing them that "the foreclosure sale date has been rescheduled" for October 1, 2014.[3]  Doc. no. 21-2 at 1.  Chase did not serve or deliver the letter via registered or certified mail.  After

_____

[2] The various communications from Chase are addressed to either Denise or both Denise and Jason.  For simplicity, the court will refer to the recipients of the communications as "the Dionnes."

[3] It is unclear whether the Dionnes had been notified of a foreclosure sale prior to August 2014.

2

receiving the letter informing them of the rescheduled foreclosure date, the Dionnes completed a loss mitigation application (which they downloaded from Chase's website) seeking a modification of their loan.

Over the next several months, the Dionnes submitted and resubmitted various documents Chase requested with regard to the loan modification application.  Chase sent several contradictory letters over that time frame to the Dionnes, with some indicating that it had received all the necessary documents and others indicating that it had not received certain documents and requesting those documents from the Dionnes.

On January 12, 2015, the Dionnes' home was sold at a foreclosure sale, despite their pending loan modification application.  Fannie Mae purchased the property at the sale.

## Discussion

The claims remaining in this case are: (i) violation of Regulation X of the Real Estate Settlement and Procedures Act ("RESPA"), 12 C.F.R. § 1024.41 (against Chase); (ii) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(1) (against both Chase and Fannie Mae); (iii) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et. seq. (against Chase); (iv) violation of the Unfair Deceptive, or Unreasonable Collection Practices Act, N.H. Rev. Stat. Ann.

("RSA") § 358-C (against both Chase and Fannie Mae); and (v) violation of the New Hampshire Consumer Protection Act, RSA 358-A (against Fannie Mae).

Defendants move to exclude the opinion and testimony of Diane Cipollone, the Dionnes' expert.  The Dionnes object.

I.   Applicable Standard

Federal Rule of Evidence 702 is "[t]he touchstone for the admission of expert testimony in federal court litigation . . . ." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007).  Under that rule, an expert witness may offer opinion testimony if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.  As the structure of this rule suggests, before the factfinder in a case can consider expert testimony over the adverse party's objection, the trial judge, serving as "gatekeeper," must determine whether the testimony satisfies the relevant foundational requirements.  See Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 597 (1993).  The party who is the proponent of the expert opinion bears the burden of showing that

4

it is admissible.  United States v. Tetioukhine, 725 F.3d 1, 6

(1st Cir. 2013).

II.  <u>Cipollone's Opinions</u>

Cipollone offers two opinions in her expert report:

1) JPMorgan Chase Bank Received a Complete Loss Mitigation
Application Pursuant to RESPA Regulation X No Later Than October
17, 2014;

2) In the Alternative, Chase Should Have Regarded
Plaintiffs' Application as "Facially Complete" as of October 17,
2014, Pursuant to RESPA Regulation X.

Defendants argue that Cipollone's opinions merely summarize

facts in the record and offer a conclusion that certain legal

standards were met.  They argue that Cipollone's opinions are

not based on specialized knowledge.  Defendants further argue

that even if Cipollone's opinions are based on specialized

knowledge, she offers impermissible legal conclusions.

A.   <u>Cipollone's First Opinion: Complete Application Under</u>
     <u>RESPA</u>

The Dionnes argue that Cipollone's first opinion, that

Chase received a complete loss mitigation application on or

before October 17, 2014, is based on specialized knowledge.

They contend that Cipollone uses her expertise in mortgage loan

servicing and loss mitigation issues

> to explain to the jury what [Chase's] servicing notes
> mean with regard to what documents Chase told
> Plaintiffs it needed to deem Plaintiffs' loss

> mitigation application complete, what information
> Chase knew that altered Chase's list of required
> documentation and when it knew it, and when Chase
> received each requested document.

Doc. no. 42-1 at 5.

The Dionnes' argument has several problems.  First, these
questions are factual in nature.  The Dionnes received at least
eight letters from Chase concerning their loan modification
application, and many of the letters referenced documents Chase
claimed it needed to properly review the application.  Expert
testimony is not necessary to explain the content of those
letters.

Second, the Dionnes argue that Cipollone's testimony is
necessary to explain Chase's loan servicing records to the jury
because they "contain short-hand notes, codes, and jargon unique
to the mortgage loan servicing industry."  Doc. no. 42-1 at 2.
A review of Chase's records, however, which were included with
the Dionnes' objection, shows that the records are easily
understandable to a lay person.

For example, in her expert report, Cipollone references
several of Chase's records which "indicate that pay stubs for
Accountemps were missing and needed for underwriting the loan
modification."  Doc. no. 42-2 at 5.  Rather than codes or
industry jargon, the records referenced by Cipollone use plain
language.  See doc. no. 42-3 at 15 ("DOCS STILL NEEDED: 2 MOST

6

CURRENT PAYSTUBS DENISE FROM ACCOUNTEMPTS [sic]. ONE DOC ON FILE NOT LEGIBLE;" id. at 11 ("STILL NEED . . . ADDITIONAL PAYSTUB FROM ACCOUNTEMPS"); id. at 5, 8-10, 12-14.  Cipollone does not interpret Chase's loan servicing documents; she merely paraphrases them.  Such testimony would not "assist the trier of fact to understand or determine a fact in issue." Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (citing Daubert, 509 U.S. at 591-92); see also In re Novatel Wireless Sec. Litig., No. 08cv1689 AJB (RBB), 2011 WL 5827198, at *4  (S.D. Cal. Nov. 17, 2011) ("The documents in this instance are not complicated and speak for themselves. Expert testimony is inadmissible if it addresses lay matters which a jury is capable of understanding and deciding without the expert's help." (internal quotation marks and citations omitted)).

Even if Cipollone's testimony could be useful in interpreting Chase's servicing records, she did not disclose an opinion on that subject.  The Dionnes cite two cases from the Southern District of Mississippi, see Ishee v. Fed. Nat'l Mortg. Ass'n, No. 2:13-CV-234-KS-MTP, 2015 WL 224800, at *6 (S.D. Miss. Jan. 15, 2015) and Neel v. Fannie Mae, No. 1:12CV311-HSO-RHW, 2014 WL 1117247, at *4 (S.D. Miss. Mar 20, 2014), which they assert hold that "the question of what a mortgage servicer's loan servicing records show is appropriate subject matter of

expert testimony."  Doc. no. 42-1 at 5.  The problem for the
Dionnes is that the experts in both those cases were "certified
fraud examiners," who were specifically asked, as part of their
opinions, to provide a forensic accounting investigation of the
records and offer findings and conclusions.  See Ishee, 2015 WL
224800, at *2 (noting that expert was asked to "provide a
forensic accounting investigation, examination, and analysis of
the mortgage loan transactions during the life of the subject
mortgage loan and offer his findings and conclusions"
(alterations omitted)); Neel, 2014 WL 1117247, at *1
(plaintiff's expert was retained to provide a "forensic analysis
of the data contained in" defendants' servicing notes and
records of plaintiff's payment history).

Unlike the experts in Ishee and Neel, Cipollone did not
provide an opinion based on a forensic investigation of Chase's
records.  Cipollone cannot testify about an opinion that the
Dionnes failed to disclose.  See Fed. R. Civ. P. 26(a)(2)(B)(i).

B.   Cipollone's Second Opinion: Facially Complete
     Application Under RESPA

The Dionnes also argue that Cipollone's second opinion,
that Chase should have regarded the Dionnes' application as
"facially complete," is appropriate expert testimony.  Although
the Dionnes concede that Cipollone's opinion is "couched in

8

terms of the applicable regulatory scheme," they argue that the opinion itself is "squarely factual" and, therefore, admissible. Doc. no. 42-1 at 6.

"Expert testimony that consists of legal conclusions cannot properly assist the trier of fact . . . ." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 100 (1st Cir. 1997) (internal quotation marks and citation omitted).  "This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial." Id. (citing Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.")).

Cipollone's second opinion merely quotes various subsections of RESPA's Regulation X, and concludes with the following language:

> Consistent with this provision of the loss mitigation regulation, if Chase determined after receipt of Plaintiffs' documents submitted through October 17, 2014 that additional documentation was needed to make the application complete, Chase was required to promptly notify Plaintiffs of the missing documents and treat the application as complete until the Plaintiffs were given a reasonable opportunity to complete the application.  Compliance with the facially complete regulation would have afforded Plaintiffs substantial protections to enable them to submit any such additional documentation so that the application would be timely reviewed.

Doc. no. 42-2 at 7. In other words, Cipollone's second "opinion" simply paraphrases the language of RESPA. Such expert testimony is improper. See, e.g., Stewart Title Ins. Co. v. Credit Suisse, No. 1:11-cv-227-BLW, 2015 WL 4250704, at *15 (D. Idaho July 13, 2015) (excluding expert's opinion because "they simply describe the law").[4]

### Conclusion

For the foregoing reasons, defendants' motion to exclude the opinions of Diane Cipollone (doc. no. 39) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 31, 2016

cc:  David E. Buckley, Esq.
     Nathan Reed Fennessy, Esq.
     Gary Goldberg, Esq.
     Andrea Bopp Stark, Esq.

---

[4] The Dionnes cite Darling v. IndyMac Bank, F.S.B., No. 06-123-B-W, 2007 WL 4276903, at *3-5 (D. Me. Dec. 3, 2007), in which expert opinion on the Truth In Lending Act's regulatory framework was allowed with strict limits. While expert opinion may be admissible in some regulatory contexts, the Dionnes have not shown that to be the case here.