**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Jason S. Dionne, et al.

    v.                        Civil No. 15-cv-56-LM
                                      Opinion No. 2016 DNH 209

Federal National Mortgage
Association and
JPMorgan Chase Bank, N.A.


**O R D E R**

Plaintiffs originally filed this mortgage foreclosure dispute in the New Hampshire Superior Court, Hillsborough County, Southern District, seeking to enjoin defendants Federal National Mortgage Association ("Fannie Mae") and JPMorgan Chase Bank, N.A. ("Chase") from recording a foreclosure deed on their home.  Defendants removed the lawsuit to this court, and plaintiffs filed an amended complaint, asserting eight claims against defendants, five of which remain.  The parties have filed cross-motions for summary judgment.

**Standard of Review**

Cross motions for summary judgment proceed under the same standard applicable to all motions for summary judgment, but the motions are addressed separately.  Fadili v. Deutsche Bank Nat'l Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014).  A movant is entitled to summary judgment where he "shows that there is no genuine dispute as to any material fact and [that he] is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

## Background

Denise Dionne has lived at her home at 40 Tallant Road in Pelham, New Hampshire (the "property") since 1977.  In 2005, Denise added her son, Jason Dionne, to the property's deed.  In 2006, Denise and Jason took out a $300,000 loan (the "Loan") from Domestic Bank, which was secured by a mortgage on the property.  The mortgage states that Mortgage Electronic Registration Systems, Inc. ("MERS") is the mortgagee as nominee for Domestic Bank and its successors in interest.  Jason's wife, Kathy Dionne, did not sign the note, but signed the mortgage.

On June 13, 2006, Domestic Bank assigned its interest in the Loan to Fannie Mae.  Fannie Mae has owned the Loan since that time.

MERS, as nominee for Fannie Mae, assigned the mortgage to Washington Mutual Bank ("Mutual Bank") in April 2008.  In July 2008, Denise and Jason entered into a loan modification agreement with Mutual Bank.  Shortly thereafter, in September 2008, Chase became the servicer of the Loan.  The Loan was in

default at the time Chase acquired the servicing rights.[1]  Chase has been the Loan servicer since September 2008.

At some point after Chase acquired the Loan servicing rights, the Dionnes fell behind on their payments under the modification agreement.[2]  In March 2009, the Dionnes signed a forbearance agreement, in which Mutual Bank agreed not to proceed with foreclosure if the Dionnes complied with the payment schedule outlined in the agreement.  At some point in 2009, the Dionnes fell behind on their payments under the forbearance agreement.

In late 2009 or early 2010, after falling behind on their payments under the forbearance agreement, the Dionnes submitted another loan modification application.  On March 2, 2010, Chase and the Dionnes entered into a second loan modification agreement.

Shortly after entering into the second loan modification agreement, Denise lost her job.  The Dionnes subsequently fell

---

[1] Although Chase asserts that the Loan was not in default at the time it acquired servicing rights, the record evidence shows that the Loan was in default at that time.  See infra Part III(B)(1).

[2] Although Kathy was not a party to the note, there is evidence in the record that she acted on behalf of Denise at various points throughout the loan modification application process.  Therefore, for simplicity, the court will refer to the parties to the loan modification agreements as the "Dionnes."

behind on their payments under the second loan modification agreement.

In the fall of 2010, the Dionnes received a notice of an intent to foreclose, and a foreclosure sale was scheduled for October 15, 2010.[3]  The foreclosure sale was eventually postponed.  Chase subsequently sent the Dionnes another notice of intent to foreclose in May 2011, setting a foreclosure date for June 10, 2011.

Shortly thereafter, the Dionnes submitted a third loan modification application.  Chase denied the application in September 2011.  The Dionnes then submitted a fourth loan modification application in January 2012.  Chase denied the application in February 2012.

On May 2, 2012, Fannie Mae, through its foreclosure counsel, Harmon Law Office ("Harmon"), sent a notice of foreclosure sale to the Dionnes via certified mail, setting a foreclosure date of June 1, 2012.   The notice informed the Dionnes of their right to petition the superior court to enjoin the foreclosure sale.  On August 29, 2012, the Dionnes filed a

---

[3] Although the exact chain of assignments is slightly unclear, it is undisputed that on September 1, 2010, the mortgage was assigned to Fannie Mae.  Fannie Mae has held the mortgage at all times after September 1, 2010, and Chase has remained the Loan servicer for the duration of the Loan.

Chapter 13 bankruptcy petition.[4]  The bankruptcy court dismissed the petition on February 24, 2014, when the Dionnes fell behind on their plan payments to the bankruptcy Trustee.

In March 2014, Chase sent the Dionnes paperwork for a fifth loan modification application.  On August 12, 2014, the Dionnes received a notice scheduling a foreclosure sale for October 1, 2014.

The Dionnes faxed Chase their loan modification application on August 25, 2014 (the "August 2014 application").  On the application, the Dionnes identified Denise's current employers as Accountemps and Demoulas Supermarket ("Demoulas").  Chase acknowledged receiving the Dionnes' application in a letter dated August 27, 2014.  See doc. no. 21-3.  The letter requested additional documents and stated that Chase would make a determination of eligibility within 30 days of receiving the additional documents.

At some point after the Dionnes submitted the August 2014 application, but no later than the first week of September, Denise lost her job with Demoulas.  Denise remained unemployed until mid-November.  Defendants assert that Kathy subsequently misrepresented to Chase during a phone call on September 19,

_____

[4] The record is unclear as to why the foreclosure sale did not occur on June 1, 2012.

2014 that Denise was "fully employed by Demoulas."  Doc. no. 41-23 at 2.  The Dionnes deny that Kathy made that representation.

On October 3, 2014, Chase sent the Dionnes a second letter acknowledging receipt of the August 2014 application.  See doc. no. 21-5.  Like the August 27 letter, the October 3 letter stated that the application was incomplete.

On October 7, 2014, the Dionnes received two letters from Chase.  The first, like the October 3 letter, stated that the Dionnes' loan modification application was incomplete.  See doc. no. 21-6.  The letter stated that Chase needed to receive a completed application by November 6, 2014, and that it would contact the Dionnes within 30 days of receiving the missing documents.

In the second October 7, 2014 letter, Chase again stated that the loan modification application was incomplete.  See doc. no. 21-7.  The "document status" section of the second letter stated that pay stubs and a benefits statement or letter were received, but that both were incomplete or not legible.  Id. at 5.  The letter requested another copy of those documents.  The letter also listed the November 6, 2014 deadline, and stated that Chase would contact the Dionnes within 30 days of receiving the missing documents.

The Dionnes assert that Kathy called Chase after receiving the October 7 letters and that a Chase representative told Kathy to resubmit certain documents.  The Dionnes state that Kathy faxed those documents on October 17, 2014, and that the August 2014 application was complete on that date.

Chase, however, sent the Dionnes two additional letters on October 18 and 21, 2014, stating that their loan modification application was incomplete.  See doc. nos. 21-9 and 21-10.  Both letters stated that pay stubs and a benefits statement or letter were received, but that both were incomplete or not legible. Both letters listed the November 6, 2014 deadline, and stated that Chase would contact the Dionnes within 30 days of receiving the missing documents.

The Dionnes assert that on November 5, 2014, they sent Chase paper copies via overnight mail of the August/September pay stubs Chase had requested.  In a letter dated November 8, 2014, Chase again notified the Dionnes that their application was not complete.  See doc. no. 21-12.  The letter stated that Chase had not received a completed application by the November 6, 2014 deadline, but that it may still be able to review the Dionnes' request for assistance if they were to send Chase the missing information "immediately."  Despite stating that the request was incomplete, the "document status" section of the

7

letter listed several required documents, and stated for each
that "[t]here is nothing needed from you at this time for this
document."  Doc. no. 21-12 at 4-5.  The letter listed several
documents that had been received but were pending review.  See
id.

On November 18, 2014, Harmon sent a letter to Denise and
Jason on behalf of Chase and Fannie Mae.  Harmon notified the
Dionnes that their loan had been referred to Harmon for
foreclosure.  Doc. no. 43-20.  The letter further stated that
"this office is attempting to collect a debt and that any
information obtained will be used for that purpose."  Id. at 2.

On November 19, 2014, Chase sent the Dionnes another letter
stating that their loan modification application was incomplete.
See doc. no. 21-15.  As with the November 8 letter, the November
19 letter stated that Chase had not received a complete
application by the November 6, 2014 deadline, but that it may
still be able to review the Dionnes' request for assistance if
they were to send Chase the missing information "immediately."
Unlike the November 8 letter, however, the "document status"
section of the November 19 letter listed the pay stubs as
incomplete or not legible, and requested that the Dionnes send
Chase another copy.  See id. at 8.

On December 11, 2014, Harmon delivered a foreclosure notice to the Dionnes on behalf of Chase and Fannie Mae.  See doc. no. 21-18.  The notice informed the Dionnes that a foreclosure sale was scheduled for January 12, 2015, at 1:00 p.m., and that they had the right to petition the superior court to enjoin the foreclosure sale.

On January 12, an auctioneer appeared at the property to conduct the foreclosure sale.  Kathy called Chase, Fannie Mae, and Harmon, but each told Kathy that it could not stop the foreclosure sale.  The foreclosure sale took place as scheduled, and Fannie Mae purchased the property at the sale.

## Discussion

The parties separately move for summary judgment on all five counts in the amended complaint.  The court addresses each count separately below.

## I.   Count I: Real Estate Settlement Procedures Act ("RESPA")

In Count I of their amended complaint, the Dionnes allege that Chase violated five separate provisions of Regulation X of RESPA, 12 CFR § 1024.41.  The five violations fall into two categories of conduct: (1) failing to properly review the Dionnes' loss mitigation application, see 12 CFR §§ 1024.41(b)(1) & (b)(2), and (2) conducting a foreclosure sale

prior to acting on their complete loss mitigation application, see 12 CFR §§ 1024.41(c), f(2), & (g).[5]

The Dionnes and defendants separately move for summary judgment on the RESPA claim in its entirety.  Although the parties address the individual RESPA violations specifically, defendants also raise certain threshold issues with regard to the claim, which they assert are dispositive of the RESPA claim in its entirety.  Therefore, the court addresses the threshold issues first before turning to the parties' arguments as to the individual RESPA violations.

A.   Threshold Issues

Defendants argue that they are entitled to summary judgment on the Dionnes' RESPA claim in its entirety because the Dionnes submitted several other loss mitigation applications prior to the August 2014 application.  Defendants contend that these prior loss mitigation applications eliminate RESPA protection for the August 2014 application.  Defendants also argue that the Dionnes have not suffered any damages from the alleged RESPA violations and that, regardless, defendants are entitled to summary judgment as to Kathy Dionne's RESPA claim because she did not sign the note.

---

[5] The parties use the term "loan modification application," while RESPA refers to a "loss mitigation application."  This order uses the terms interchangeably.

1.   Prior Loss Mitigation Applications

Under RESPA, "[a] servicer is only required to comply with the requirements of [the statute] for a single complete loss mitigation application for a borrower's mortgage loan account." 12 CFR § 1024.41(i).  Defendants argue that because Chase considered several loss mitigation applications that the Dionnes submitted prior to 2014, and even agreed to a loan modification in 2010, Chase did not need to comply with RESPA when considering the August 2014 application.  The Dionnes argue that Chase had to comply with the requirements of RESPA at least once after January 10, 2014, the date § 1024.41 became effective, regardless of whether the Dionnes had submitted other loss mitigation applications prior to that date.

Federal courts have consistently held that a loan servicer must comply with the requirements of § 1024.41 at least once after the January 10, 2014 effective date of the regulation, regardless of whether the servicer evaluated a borrower's prior loss mitigation application prior to that date.  See, e.g., Garmou v. Kondaur Capital Corp., No. 15-12161, 2016 WL 3549356, at *3 (E.D. Mich. June 30, 2016); Bennett v. Bank of Am. N.A., 126 F. Supp. 3d 871, 884 (E.D. Ky. 2015).  Here, Chase reviewed the Dionnes' other applications prior to January 10, 2014.  Therefore, consideration of those loan modification applications

does not relieve Chase of its obligations to comply with RESPA for the August 2014 application.

Thus, Chase has not shown that it satisfied § 1024.41(i), and defendants are not entitled to summary judgment on the Dionnes' RESPA claim on that basis.

### 2.   Damages

Defendants argue that summary judgment is appropriate on the Dionnes' RESPA claim in its entirety because the Dionnes have failed to establish that the alleged RESPA violations caused them actual damages, including emotional distress damages.  The Dionnes argue that there is sufficient evidence in the record of actual damages to support the claim.

Under RESPA, the borrower may recover (1) any actual damages suffered as a result of the loan servicer's failure to comply with RESPA and (2) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance, in an amount not to exceed $2,000.  See 12 U.S.C. § 2605(f)(1).  To recover such damages, though, a plaintiff "must present specific evidence to establish a causal link between the financing institution's violation and their injuries." Moore v. Mortg. Elec. Registration Sys., Inc., No. 10-cv-241-JL, 2013 WL 1773647, at *3 (D.N.H. Apr. 25, 2013) (internal quotation marks and citation omitted).  Actual damages

under RESPA include damages for emotional distress, provided
that the plaintiff establishes a causal relationship between
that distress and the alleged RESPA violation.  Moore v. Mortg.
Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 123 (D.N.H.
2012).

The record evidence includes testimony from both Jason and
Denise that Chase's conduct during the loss mitigation
application process caused anxiety and distress.  The Dionnes
also point to out-of-pocket expenses allegedly incurred as a
result of Chase's RESPA violations, such as the cost of
mailings.  Viewed favorably to the Dionnes, the record contains
sufficient evidence to create a jury question as to whether
Chase's alleged violations of RESPA caused the Dionnes to suffer
actual damages.

### 3.   Kathy Dionne's Standing

Defendants argue that one of the plaintiffs, Kathy Dionne,
lacks standing to recover damages for Chase's alleged RESPA
violations.  Defendants assert that because Kathy did not sign
the promissory note, she is not a "borrower" protected by RESPA.

RESPA provides that whoever fails to comply with its
provisions "shall be liable to the borrower" for damages.
§ 2605(f).  Under RESPA, the term "borrower" means a borrower on
the loan, not merely a borrower named in the mortgage.  See

_Sharp v. Deutsche Bank Nat'l Trust Co_., No. 14-cv-369-LM, 2015 WL 4771291, at *5-6 (D.N.H. Aug. 11, 2015) (collecting cases). Therefore, a plaintiff named as a borrower in the mortgage but who did not sign the note lacks standing to pursue a RESPA violation.  Id.

The record is clear that although Kathy signed the mortgage, she did not sign the promissory note as a borrower. Thus, Kathy is not a borrower on the loan and lacks standing to assert a claim under RESPA.

Accordingly, defendants are entitled to summary judgment to the extent Count I is based on Kathy Dionne's claims against Chase.  The Dionnes cannot recover damages suffered by Kathy for Chase's alleged violations of RESPA.

B.    Specific RESPA Violations

The Dionnes' RESPA claim in Count I is based on Chase's alleged violation of five separate provisions of the statute: 12 CFR §§ 1024.41(b)(1), (b)(2), (c), (f), and (g).  The Dionnes move for summary judgment as to each separate violation. Defendants move for summary judgment as to §§ 10241(c), (f), and (g).[6]

---

[6] Other than the threshold arguments discussed above, defendants do not raise any specific arguments as to §§ 1024.41(b)(1) or (b)(2).

1.   12 CFR § 1024.41(b)(1)

Section 1024.41(b)(1) provides that a "servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."  The Dionnes move for summary judgment on their RESPA claim based on § 1024.41(b)(1), arguing that the evidence in the record shows that Chase failed to act with reasonable diligence with regard to the August 2014 application.  In support of their argument, the Dionnes assert that Chase repeatedly requested documents it already possessed and documents it knew or should have known were not required to complete the application.

Viewing the record evidence in the light most favorable to defendants, genuine issues of material fact exist as to whether Chase requested documents from the Dionnes it already possessed or whether it requested documents that were unnecessary to complete the Dionnes' loss mitigation application.  Thus, the court cannot determine, as a matter of law, whether Chase failed to exercise reasonable diligence in obtaining the Dionnes' information to complete the August 2014 application.  Therefore, the Dionnes are not entitled to summary judgment as to their RESPA claim based on § 1024.41(b)(1).

2.   12 CFR § 1024.41(b)(2)

Under § 1024.41(b)(2)(i), if a servicer determines that a loss mitigation application submitted 45 days before a foreclosure sale is incomplete, the servicer must notify the borrower what additional documents and information the servicer requires.  The notice "must include a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete." § 1024.41(b)(2)(ii).

The Dionnes move for summary judgment on their RESPA claim based on § 1024.41(b)(2), asserting that Chase's letters did not satisfy the regulation.  Specifically, the Dionnes contend that the letters informing them that the August 2014 application was incomplete violated the regulation by requesting documents "immediately," rather than by a reasonable date.  Defendants argue that questions of material fact remain as to whether Chase's notices to the Dionnes satisfied the requirements of § 1024.41(b)(2).

The Dionnes offer no case law to support their argument that requiring documents be submitted immediately does not comply with § 1024.41(b)(2).  The question of the reasonableness of timing, in this context, is a fact-intensive inquiry. Viewing the evidence in the light most favorable to defendants, there is a genuine issue of material fact as to whether Chase's

16

notices complied with the "reasonable date" requirement in §

1024.41(b)(2).  Therefore, the Dionnes are not entitled to

summary judgment on their RESPA claim based on § 1024.41(b)(2).

    3.   12 CFR § 1024.41(c)

    Section 1024.41(c) provides, in relevant part:

> [i]f a servicer receives a complete loss mitigation
> application more than 37 days before a foreclosure
> sale, then, within 30 days of receiving a borrower's
> complete loss mitigation application, a servicer
> shall: (i) [e]valuate the borrower for all loss
> mitigation options available to the borrower; and (ii)
> [p]rovide the borrower with a notice in writing
> stating the servicer's determination . . . .

    The Dionnes move for summary judgment on their RESPA claim

based on § 1024.41(c), asserting that Chase failed to evaluate

and provide a response to the August 2014 application, which was

timely completed no later than October 17, 2014.  Defendants

move for summary judgment, asserting that (a) the Dionnes never

submitted a complete loss mitigation application, (b) even if

they had submitted a timely application, the application

contained false information which renders it incomplete after

the fact, and (c) even if the Dionnes submitted a complete loss

mitigation application on October 17, 2014, that date was not

more than 37 days before the foreclosure sale.[7]

_____

    [7] Although defendants raise this last ground in their
objection to the Dionnes' summary judgment motion, rather than
directly in their summary judgment motion, the Dionnes have had
a full opportunity to address it in document no. 70.  The court

a.  The Dionnes' Summary Judgment Motion

There is no dispute that Chase failed to provide the Dionnes with a notice in writing, stating its determination as to the August 2014 application.  Thus, the Dionnes' summary judgment motion hinges on whether they submitted a complete loss mitigation application more than 37 days before the sale.

RESPA provides that a "complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." § 1024.41(b)(1).  The Dionnes assert that they submitted all necessary information for the August 2014 application by October 17, 2014.  Defendants state that the Dionnes' application was never complete because they failed to submit certain documents that were necessary for Chase to evaluate the application.

The record evidence is unclear as to whether certain documents the Dionnes submitted during September and October were incomplete or illegible; whether the Dionnes submitted all the documents that Chase requested; whether Chase requested

addresses this issue in its discussion of defendants' summary judgment motion, rather than in its discussion of the Dionnes' motion.  See Fed. R. Civ. P. 56(f).

documents it already possessed; and, ultimately, whether Chase
received all the information it needed to review the Dionnes'
application.  As such, there are genuine issues of material fact
as to whether the Dionnes' application was complete.  Thus, the
Dionnes are not entitled to summary judgment on their RESPA
claim based on § 1024.41(c).

> b.   Defendants' Summary Judgment Motion

Defendants assert that the Dionnes never submitted a
complete loss mitigation application and, therefore, they cannot
recover under § 1024.41(c).  For the reasons discussed above,
there is a genuine issue of material fact as to whether the
Dionnes submitted all the information Chase required to evaluate
their application.  Therefore, defendants are not entitled to
summary judgment on that basis.

Defendants also argue that even if the Dionnes had
submitted all the necessary information on October 17, their
application was not complete because (1) Kathy affirmatively
misrepresented Denise's employment status to Chase during a
September 19, 2014 telephone call, and (2) discovery revealed
that the Dionnes failed to disclose changes in Denise's
employment status while the application was pending.  Defendants
further contend that even if the Dionnes had submitted a

complete application on October 17, 2014, that date was not more than 37 days before the scheduled foreclosure sale.

i.   Denise's Employment Status

Defendants argue that the Kathy's misrepresentation concerning Denise's employment status renders the August 2014 application incomplete after the fact.  The Dionnes assert that they never affirmatively misrepresented Denise's employment status and that, in any event, a change in a borrower's employment status does not render a pending application incomplete.

The record evidence shows that a factual dispute remains as to whether Kathy misrepresented Denise's employment status to Chase during the September 19, 2014 telephone call.  Therefore, defendants are not entitled to summary judgment on that basis.

In addition, defendants do not cite, and the court is not aware of, any authority for the proposition that a complete loss mitigation application is rendered incomplete as a matter of law when the lender later discovers that part of the application was inaccurate when submitted.[8]  RESPA states that an application is

---

[8] Chase cites to New Hampshire misrepresentation law for the proposition that a party's partial disclosure creates a duty of full disclosure.  But Chase fails to cite any authority allowing the court to conclude that completeness of an application under RESPA is dependent on state disclosure law.

complete when a servicer receives all the information it requires from a borrower, but says nothing about the accuracy of such information.  See § 1024.41(b)(1).  Further, defendants provide no authority to support the conclusion that a borrower has a duty to correct information that becomes outdated while an application is pending, or that such mistakes or misrepresentations render an otherwise complete application incomplete for purposes of RESPA.[9]

Chase first learned that Denise's employment information in the application was not current during discovery in this case. When the application was submitted, therefore, Chase had no reason to question the employment information.  Defendants have not shown that misrepresentations or mistakes related to Denise's employment status that it learned of years later excuse its failure to act in accordance with RESPA.

---

[9] Chase further contends that language in the application that protects the lender from fraud creates a duty under RESPA for borrowers to correct information in the application on an ongoing basis in order to render the application "complete" under the statute.  Nothing in RESPA supports this argument. Moreover, whether the application is complete at "time 1" under RESPA is an entirely different question than whether a contractual breach entitles the lender to terminate an agreement at "time 2."

ii.  <u>37 Days Before the Foreclosure Sale</u>

Defendants argue that even if the Dionnes submitted a complete loss mitigation application on October 17, 2014, the Dionnes' claim under § 1024.41(c) still fails because that was not more than 37 days before the foreclosure sale.  There is no dispute, however, that the foreclosure sale did not occur until January 12, 2015, far more than 37 days after October 17, 2014.

Defendants argue, nevertheless, that the relevant date of a "foreclosure sale" under § 1024.41(c) is the originally scheduled foreclosure sale date.  In this case, that date is October 1, 2014.  Because the Dionnes submitted their complete application on October 17, 16 days after the date the sale was scheduled, defendants argue that the Dionnes cannot be afforded protection under § 1024.41(c).

Defendants point to the following language in RESPA to support their theory that the originally-scheduled foreclosure sale date, should be used to determine the timeliness of an application:

> To the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs, such determination shall be made as of the date a complete loss mitigation application is received.

12 CFR § 1024.41(b)(3).  Defendants note that as of October 17, 2014, the date the Dionnes contend their application was

22

complete, the only scheduled foreclosure date was October 1, 2014. They argue that they did not, therefore, receive the complete application more than 37 days before the scheduled foreclosure date.

The Eleventh Circuit recently addressed the issue of determining the timeliness of an application under § 1024.41(b)(3). See Lage v. Ocwen Loan Servicing LLC, --- F.3d ---, 2016 WL 5864507 (11th Cir. Oct. 7, 2016). In Lage, a foreclosure sale was originally scheduled for January 29, 2014. Id. at *3. The borrowers submitted a complete loss mitigation application on January 27, and on January 28 the servicer cancelled and rescheduled the foreclosure sale. Id. The court held that the borrowers' application was untimely because on the date their complete application was received, a foreclosure sale was scheduled to occur in two days. See id. at *5 ("[T]o determine whether the Borrowers' application was timely, we must ask whether, when the Borrowers submitted their complete loss mitigation application on January 27, more than 37 days remained before the foreclosure sale was scheduled to occur."). The servicer's subsequent postponement of the foreclosure sale was irrelevant for determining timeliness of the application under § 1024.41(b)(3). Id.

Defendants rely on Garmou, a case from the Eastern District of Michigan, to support their argument that the Dionnes'

application was untimely.  In Garmou, the borrower submitted a
complete loss mitigation application on April 28, 2015, less
than 37 days before a foreclosure sale scheduled for May 22,
2015.  See 2016 WL 3549356, at *4.  After receiving the
borrower's application, the servicer postponed the foreclosure
sale.  Id.  The court held that RESPA's protections did not
apply because when the servicer received the completed
application, a foreclosure sale was scheduled to occur in 37
days or less.  See id. at *4-5.  Although the foreclosure sale
was subsequently rescheduled, the application was untimely on
April 28, the date when the servicer received the complete
application.  See id. at *5.

     The Dionnes' case is clearly different than the situations
in Garmou and Lage.  In those cases, the servicer postponed the
foreclosure sale after receiving the borrower's complete loss
mitigation application.  At the time the servicer received the
complete application, a foreclosure sale was scheduled to occur
in 37 days or less.  Here, however, Chase cancelled the
foreclosure sale before receiving the Dionnes' complete
application on October 17, 2014.  Although the foreclosure sale
was originally scheduled for October 1, 2014, that date passed
without a sale occurring.

     Pursuant to § 1024.41(b)(3), the determination of the
application's timeliness for RESPA purposes had to be made as of

October 17.  On that date, no foreclosure sale was scheduled to occur in 37 days or less and, in fact, there was no pending foreclosure sale as of that date.  The court therefore rejects defendants' argument that even if the Dionnes submitted a complete loss mitigation application on October 17, it was untimely under RESPA.

Accordingly, defendants are not entitled to summary judgment on the Dionnes' RESPA claim based on § 1024.41(c).

4.   12 CFR §§ 1024.41(f)(2) and (g)

The Dionnes allege that Chase violated 12 CFR § 1024.41(f)(2) or, in the alternative, § 1024.41(g).  Section 1024.41(f)(2) prohibits a loan servicer from foreclosing under certain circumstances if the borrower submits a complete loss mitigation application before the servicer has made "the first notice or filing required by applicable law" for a non-judicial foreclosure.  Section 1024.41(g) prohibits a servicer from foreclosing under certain circumstances if a borrower has submitted a complete loss mitigation application after the servicer has made "the first notice or filing required by applicable law."  The Dionnes and defendants move for summary judgment on both alleged violations.

Both sections put obligations on a loan servicer in the event that a borrower submits a complete loss mitigation

application.  As discussed above, there is a genuine issue of material fact as to whether or when the Dionnes submitted a complete loss mitigation application.  Therefore, on that basis, neither the Dionnes nor defendants are entitled to summary judgment on § 1024.41(f)(2) or § 1024.41(g).

Defendants also argue that § 1024.41(f) does not apply because the Dionnes submitted their application after the first foreclosure notice.  They further contend that § 1024.41(g) does not apply because the Dionnes failed to perform under prior loan modification agreements.  The court addresses these two arguments below.

a.   12 CFR § 1024.41(f)

There is no dispute that in May 2012, the Dionnes received notice in accordance with RSA 479:25, indicating that a non-judicial foreclosure sale of their property had been scheduled for June 1, 2012.  At best, the Dionnes submitted their complete application more than two years later, which would seemingly require judgment for defendants on the Dionnes' § 1024.41(f)(2) claim.

The Dionnes argue that the May 2012 foreclosure notice had no legal effect because the foreclosure sale did not occur in June 2012.  They argue that the indefinite postponement of the

foreclosure sale voids the May 2012 foreclosure notice, and therefore, it was not the first notice under RESPA.

While the Dionnes are correct that under New Hampshire law a foreclosure notice is voided when the foreclosure is postponed indefinitely, see, e.g., Zeoli v. RIHT Mortg. Corp., 148 B.R. 698, 701 (D.N.H. 1993), their argument is misplaced. Section 1024.41(f)(2) applies only if a borrower submits a complete loss mitigation application "before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process." (emphasis added). This broad language encompasses foreclosure proceedings that are subsequently postponed or cancelled. Thus, although the foreclosure sale scheduled for June 1, 2012, never occurred, the May 2012 letter was the first notice required by New Hampshire law to initiate that foreclosure process. See also Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10833 (Feb. 14, 2013) (noting that for purposes of § 1024.41(f) "the first notice or filing required by applicable law refers to any document required to be . . . provided to a borrower as a requirement for proceeding with a judicial or non-judicial foreclosure process" (emphasis added)). Therefore, the Dionnes submitted the August 2014 application after Chase made the first notice for a foreclosure process. Accordingly, Chase was not subject to the

requirements of § 1024.41(f)(2) when considering the application, and defendants are entitled to summary judgment on that portion of the Dionnes' RESPA claim.

       b.   12 CFR § 1024.41(g)

Defendants move for summary judgment on the Dionnes' claim under § 1024.41(g), asserting that the Dionnes entered into and failed to perform under loan modification agreements in 2008 and 2010.  Defendants argue that RESPA bars the Dionnes' claim under § 1024.41(g) on that basis.

Section 1024.41(g) prohibits a servicer from conducting a foreclosure sale if a borrower submits a complete loss mitigation application more than 37 days before a foreclosure sale unless, among other exceptions, the "borrower fails to perform under an agreement on a loss mitigation option." § 1024.41(g)(3).

Defendants interpret § 1024.41(g)(3) as precluding a borrower's claim under § 1024.41(g) if the borrower ever received and failed to perform under a loss mitigation agreement.  A plain reading of the statute, however, does not support defendants' argument.  Section 1024.41(g)(3) allows a servicer to foreclose if, after receipt of a complete loss mitigation application, the servicer offers the borrower a loss mitigation option, the borrower agrees to the option, and the

borrower subsequently fails to perform.  That section cannot

plausibly be read to eliminate the protections of § 1024.41(g)

if a borrower had previously received and failed to perform

under a loss mitigation application.  Therefore, defendants are

not entitled to summary judgment as to the portion of the

Dionnes' RESPA claim based on § 1024.41(g).

### 5.   Summary

Accordingly, defendants are entitled to summary judgment as

to Count I to the extent it is based on a violation of

§ 1024.41(f)(2), and to the extent it is brought by Kathy

Dionne.  Defendants' summary judgment motion is denied as to the

remainder of Count I, and the Dionnes' motion for summary

judgment on Count I is denied in its entirety.

## II.   Count II: Equal Credit Opportunity Act ("ECOA")

Count II of the amended complaint alleges that Chase and

Fannie Mae violated the ECOA, 15 U.S.C. § 1691(d)(1), by failing

to notify the Dionnes of an action on the August 2014

application within 30 days of receipt of the application.

Section 1691(d)(1) provides that "[w]ithin thirty days . . .

after receipt of a completed application for credit, a creditor

shall notify the applicant of its action on the application."

15 U.S.C. § 1691(d)(1).  The Dionnes and defendants separately

move for summary judgment on Count II.

In support of their respective summary judgment motions, the parties advance the same arguments discussed in Count I above: defendants argue that they never received a complete loss mitigation application, while the Dionnes argue that they submitted a complete application no later than October 17, 2014.

The ECOA's implementing regulations define a "completed application" as

> an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral).

12 CFR § 202.2(f).  This definition is substantially the same as RESPA's definition of a "complete loss mitigation application." See 12 CFR § 1024.41(b)(1) ("A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower.").

As discussed above, a genuine issue of material fact exists as to whether the Dionnes ever submitted a complete loss mitigation application.  Therefore, summary judgment on the Dionnes' ECOA claim is not appropriate for either the Dionnes or

30

defendants.  Accordingly, both motions for summary judgment are denied as to Count II.

III. Count III: Fair Debt Collection Practices Act ("FDCPA")

In Count III, the Dionnes allege that Chase violated the FDCPA, 15 U.S.C. §§ 1692 et. seq.  To state a claim under the FDCPA, plaintiffs must allege that:

> (1) they have been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the [FDCPA].

LaCourse v. Ocwen Loan Servicing, LLC, No. 14-cv-013-LM, 2015 WL 1565250, at *9 (D.N.H. Apr. 7, 2015) (quoting Moore, 848 F. Supp. 2d at 113) (further citations omitted).

The Dionnes allege in their complaint that Chase engaged in a "prohibited act" by threatening to foreclose, and then foreclosing, on their property without the "present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).  The Dionnes allege that because Chase violated RESPA, it had no present right to possess the property.

A.   The Dionnes' Motion

The Dionnes move for summary judgment, arguing that because Chase never evaluated their complete loss mitigation

application, Chase violated RESPA and had no present right to
possess the property.  However, as discussed above, there are
genuine issues of material fact as to whether the Dionnes ever
submitted a complete loss mitigation application or violated
RESPA.  For this reason, the Dionnes are not entitled to summary
judgment on their FDCPA claim.

       B.   <u>Defendants' Motion</u>

Defendants move for summary judgment on the ground that
Chase was not a debt collector for purposes of the FDCPA.  For
the reasons explained below, defendants are not entitled to
summary judgment on that basis.  However, defendants are
entitled to summary judgment on the Dionnes' FDCPA claim on a
basis not raised by defendants: that is whether Chase foreclosed
without the right to possess the property.  Because defendants
failed to raise the second issue, the court permitted the
Dionnes an opportunity to address it for purposes of the pending
summary judgment motion.  <u>See</u> Fed. R. Civ. P. 56(f).  The court
has considered the Dionnes' arguments on that issue, and
addresses both bases for summary judgment below.

       1.   <u>Debt Collector</u>

The parties agree that the term "debt collector" under the
FDCPA does not include a mortgage servicing company unless the
borrower's debt was in default at the time the company began

servicing the loan.  See, e.g., Crepeau v. JP Morgan Chase Bank, N.A., No. 11-cv-125-JL, 2011 WL 6937508, at *5 (D.N.H. Dec. 5, 2011).  The parties dispute whether the Dionnes were in default when Chase began servicing the Loan.

"Although the [FDCPA] does not define 'in default,' courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts . . . governing the debt at issue." De Dios v. Int'l Realty & Invs., 641 F.3d 1071, 1074 (9th Cir. 2011) (citing Fed. Trade Comm'n, Advisory Op. n.2 (April 25, 1989) ("Whether a debt is in default is generally controlled by the terms of the contract creating the indebtedness and applicable state law.")).  Thus, the terms of a borrower's note dictate whether the debt was in default when the servicer acquired the loan.

Chase's loan servicing notes indicate that on October 4, 2008, the Dionnes were 33 days delinquent in their loan payments.  See doc. no. 43-9.  Thus, Chase's own records show that the Dionnes missed their September 1, 2008 loan payment, and defendants offer no evidence to contradict Chase's servicing notes.  The Dionnes' note states: "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."  Doc. no. 41-2 at 3.  Therefore, the Dionnes were in default as of September 1, 2008, and there is no dispute that Chase began servicing the Loan after that date.

Accordingly, Chase qualified as a debt collector under the FDCPA, and defendants are not entitled to summary judgment on that basis.

2.   Right to Possess the Property

There is a more fundamental problem with the Dionnes' FDCPA claim based on § 1692f(6)(A); that is, whether Chase foreclosed without the "present right to possession of the property."  The Dionnes assert that Chase lacked the right to possess the property when it foreclosed because Chase had violated RESPA.

"A court should look to state law requirements to determine whether there was a present right to possession under the FDCPA." Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 233 (D. Mass. 2011) (quoting Revering v. Norwest Bank Minn., N.A., No. Civ. 99-480/RHK/JMM, 1999 WL 33911360, at *5 (D. Minn. Nov. 30, 1999)).  "[I]n order to state a viable claim under § 1692f(6) of the FDCPA, a plaintiff must allege that defendant initiated foreclosure proceedings without the requisite possessory interest under state foreclosure law." Lowenstern v. Residential Credit Sols., No. 11-11760-MLW, 2013 WL 697108, at *6 (D. Mass. Feb. 25, 2013).  Thus, state, not federal, law determines whether a foreclosing party has a present right to possess the property under § 1692f(6)(A).

Because state law and not federal law determines whether Chase had a right to possess the property, Chase's alleged RESPA violations, even if proven, are insufficient to be the basis of an FDCPA claim under § 1692f(6)(A).  The Dionnes do not argue, and the record does not show, that defendants lacked the right to possess the property under New Hampshire law.  Defendants are therefore entitled to summary judgment on the Dionnes' FDCPA claim.

IV.  Count IV: Unfair, Deceptive, or Unreasonable Collection Practices Act ("UDUCPA")

In Count IV of the amended complaint, the Dionnes allege that Chase and Fannie Mae violated New Hampshire's UDUCPA, RSA 358-C, by threatening to foreclose on the property in violation of RESPA.

In order to recover under the UDUCPA, a plaintiff must show that (1) the plaintiff has "been the object of collection activity arising from a consumer debt"; (2) the defendant is a debt collector as defined by the UDUCPA; and (3) "the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the" UDUCPA.  Pruden v. CitiMortgage, Inc., No. 12-cv-452-LM, 2014 WL 2142155, at *8 (D.N.H. May 23, 2014) (internal quotation marks and citations omitted).  A prohibited act includes "[t]hreaten[ing] to take any unlawful action or action which the debt collector in the regular course

35

of business does not take." RSA 358-C:3, III.  The Dionnes

allege that Chase's many letters unlawfully threatened to

foreclose on the property when Chase's RESPA violation

prohibited a foreclosure sale.  The Dionnes and defendants

separately move for summary judgment on this claim.

A.   Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the Dionnes' UDUCPA

claim, asserting that they did not engage in a prohibited act as

defined by the UDUCPA.  In support of this argument, defendants

rely on Brown v. Wells Fargo Home Mortg., No. 15-cv-467-JL, 2016

WL 3440591 (D.N.H. June 20, 2016).  In Brown, the plaintiffs

alleged that the defendants violated the UDUCPA when they took

an "action which [a] debt collector in the regular course of

business does not take" by threatening to foreclose on the

plaintiffs' home.  Id. at *5.  The court dismissed the

plaintiffs' UDUCPA claim because threatening to foreclose is "an

action often taken in the regular course of business . . . ."

Id.  However, the plaintiffs in Brown did not allege that the

threat constituted "unlawful action" under RSA 358-C:3, III.

See id.  Thus, the court decided the UDUCPA claim solely on the

ground that threats to foreclose occur regularly in the course

of a loan servicer's business; the court did not address whether

36

such threats might be "unlawful action" in that case because plaintiffs did not make that claim.  See id.

The present case is different.  The Dionnes have alleged that defendants violated RSA 358-C:3, III, which prohibits threatening to take any unlawful action or action which the debt collector in the regular course of business does not take.  As discussed above, there is a genuine issue of material fact as to whether Chase violated § 1024.41(g) of RESPA, which makes conducting a foreclosure sale unlawful if the borrower submits a complete loss mitigation application 37 days or more before a foreclosure sale.  Thus, there is a genuine issue of material fact as to whether defendants threatened to conduct a foreclosure sale in violation of RESPA.  As such, defendants are not entitled to summary judgment on Count IV.

B.   The Dionnes' Motion for Summary Judgment

The Dionnes move for summary judgment, arguing that the defendants engaged in a "prohibited act" by unlawfully threatening to foreclose on the property when they were precluded from doing so under RESPA, § 1024.41(g).  As detailed above, genuine issues of material fact exist as to whether defendants actually violated that section of RESPA.  Thus, the Dionnes are not entitled to summary judgment.

Accordingly, both motions for summary judgment are denied as to Count IV.

V.   Count V: Consumer Protection Act ("CPA")

Count V of the amended complaint alleges that Fannie Mae violated the New Hampshire CPA, RSA 358-A, by engaging in unfair conduct during the course of the Dionnes' efforts to complete the August 2014 application and in Fannie Mae's subsequent efforts to foreclose on the property.  Defendants and the Dionnes separately move for summary judgment on this count.

In support of their motion, defendants argue that (1) the Dionnes have presented evidence related to Fannie Mae's agents, but have provided no evidence that Fannie Mae itself violated the CPA; and (2) the Dionnes have not presented evidence that would pass muster under the "rascality" test set forth by the New Hampshire Supreme Court.  See George v. Al Hoyt & Sons, Inc., 162 N.H. 123, 129 (2011).  The Dionnes argue that they are entitled to summary judgment because violations of the UDUCPA are per se violations of the CPA under RSA 358-C:4, VI.

A.   Defendants' Motion for Summary Judgment

Defendants' first argument is that the Dionnes' have not provided evidence of any acts by Fannie Mae that would violate the CPA.  This argument lacks merit.  A principal can be held vicariously liable under the CPA for the actions of its agents.

See LaCourse, 2015 WL 1565250, at *3.  Defendants do not dispute
that Chase acted as Fannie Mae's agent throughout the loan
modification and foreclosure process.  Thus, Fannie Mae can be
held vicariously liable as to the Dionnes' CPA claim for Chase's
actions.

Defendants' argument as to rascality also fails.  The New
Hampshire Supreme Court has recognized that the CPA "is broadly
worded, and not all conduct in the course of trade or commerce
falls within its scope." George, 162 N.H. at 129 (internal
citation omitted).

> In determining which commercial actions not
> specifically delineated are covered by the act, we
> have employed the "rascality test."  Under the
> rascality test, the objectionable conduct must attain
> a level of rascality that would raise an eyebrow of
> someone inured to the rough and tumble of the world of
> commerce.

Id. (internal citations omitted).

Here, the Dionnes have not alleged a violation of one of
the CPA's enumerated prohibited acts, but have provided evidence
of Chase's alleged misconduct during its handling of the August
2014 application and the foreclosure process.  In light of the
significant factual disputes regarding how Chase handled the
August 2014 application and the process by which defendants
proceeded to foreclosure, the question of whether defendants'
alleged misconduct raises an eyebrow under the rascality test is

best left to a jury.  Defendants' motion for summary judgment on
the Dionnes' CPA claim is therefore denied.

### B.   The Dionnes' Motion for Summary Judgment

The Dionnes assert that the CPA provides that a violation
of the UDUCPA is a per se violation of the CPA, citing RSA
358-C:4, VI.  That section of the CPA provides that "[a]ny
violation of the provisions of [the UDUCPA] shall also
constitute an unfair and deceptive act or practice within the
meaning of RSA 358-A:2 and may be enforced by the attorney
general pursuant to RSA 358-A."

There are two problems with the Dionnes' argument.  The
first is that, for the reasons discussed above, the Dionnes are
not entitled to summary judgment on their UDUCPA claim.  Thus,
even if a violation of the UDUCPA entitled the Dionnes' to
judgment on their CPA claim, the Dionnes have not shown the
predicate UDUCPA violation.

The second problem is that RSA 358-C:4, VI "limits
enforcement to the attorney general." Gustafson v. Recovery
Servs., No. 14-cv-305-JD, 2015 WL 5009108, at *4 (D.N.H. Aug.
21, 2015) (citing cases).  Thus, a violation of the UDUCPA, by
itself, does not necessarily entitle a party in a civil lawsuit
to judgment on a CPA claim.  Id.

Accordingly, both motions for summary judgment are denied as to Count V.

## Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment (doc. no. 43) is denied.  Defendants' motion for summary judgment (doc. no. 41) is granted as to Count III and Count I to the extent it is brought by Katherine Dionne and to the extent it is based on a violation of § 1024.41(f)(2), and is otherwise denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 21, 2016

cc:   David E. Buckley, Esq.
      Gary Goldberg, Esq.
      Andrea Bopp Stark, Esq.
      Nathan Reed Fennessy, Esq.